IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

ROXANN EUTSLER,                )
                               )
              Plaintiff,       )
                               )
vs.                            )      Case No. 07-5042-CV-SW-ODS
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social Security, )
                               )
              Defendant.       )

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her applications for disability and Supplemental Security Income benefits. The Commissioner's decision is affirmed.

### I. BACKGROUND

Plaintiff was born in June 1960, has completed the tenth grade and has prior work experience as a sewing machine operator and a convenience store clerk. She alleges she became disabled on February 19, 2003.

Plaintiff began seeing Dr. Melinda Crockett-Maples in July 2000. R. at 186. Despite the fact that she smoked two packs of cigarettes per day, Plaintiff did not initially report any respiratory problems. However, in March 2001 Plaintiff reported "intermittent congestion" and coughing. Dr. Crockett-Maples initially diagnosed Plaintiff as suffering from an infection, prescribed medication and advised Plaintiff to stop smoking. R. at 185. Treatment continued for approximately a year without any improvement, R. at 183-84; nonetheless, Dr. Crockett-Maples indicated Plaintiff demonstrated normal breath sounds, no wheezing and no distress. R. at 181. In October 2002 Dr. Crockett-Maples indicated Plaintiff's symptoms seemed to be more

severe, diagnosed acute sinusitis and allergies, and prescribed appropriate medication. R. at 178-79.

In September 2003, Plaintiff reported problems with heartburn, allergies, and restlessness in her legs. She was prescribed Claritin for her allergies and told to take "double doses" of the over-the-counter medication for her heartburn. R. at 172-73. The following month, Plaintiff called complaining of a "bad cough when she goes outside" and expressed a desire to accept Dr. Crockett-Maples' suggestion (previously rejected by Plaintiff) to try using an inhaler. An albuterol inhaler was prescribed. In February 2004, Plaintiff was prescribed Allegra in place of the Claritin and a prescription for Flonase (a nasal spray) was added. R. at 171.

Meanwhile, Plaintiff filed her application for benefits in January 2004, alleging she became disabled in February 2003 due to breathing problems and depression. She underwent a consultative examination performed by Dr. Dewey Ballard on January 5, 2004. She told Dr. Ballard "on good days she can walk about half a block, she cannot walk one flight of steps. She has a chronic cough and a daily chest discomfort associated with the cough." Plaintiff was still smoking, and examination revealed "scattered wheezes and diminished breath sounds bilaterally." Diagnostic testing revealed forced vital capacity of 2.07 and a FEV-1 of 1.65, which indicated "moderate obstructive airway disease." R. at 218. Despite this objective test result, Dr. Ballard concluded Plaintiff "has significant chronic obstructive pulmonary disease. She continues to smoke and probably should be treated more aggressively. [S]he meets the criteria of a medical disability." R. at 219. Plaintiff was also seen by a psychologist, Eva Wilson, for a consultative psychological evaluation. Plaintiff reported being depressed and unable to drive, but Dr. Wilson concluded Plaintiff was exaggerating her condition and could understand and remember simple, "semicomplex, also some complex instructions" and could sustain concentration and persistance with simple tasks.. R. at 215-17.

2

Case 3:07-cv-05042-ODS   Document 16   Filed 03/25/08   Page 2 of 9

Plaintiff changed doctors and began seeing Dr. Esther Wadley in February or March 2004. X-rays taken in March 2004 revealed an Azygos Lobe[1] but were otherwise normal. R. at 271. Dr. Wadley's records are difficult to read, but it appears she diagnosed Plaintiff as suffering from sinusitis and prescribed inhalers. R. at 302-03. In April 2004, Plaintiff complained of pain in her middle back and Dr. Wadley indicated she suffered from a thoracic strain. R. at 300. One page of a Residual Functional Capacity Form prepared by Dr. Wadley[2] in April 2004 indicates Plaintiff can only occasionally climb, balance, stoop, kneel, crouch, crawl, reach or handle and can push or pull less than fifteen pounds without limitation. She indicated Plaintiff should avoid all exposure to dust, fumes and heights, and avoid moderate exposure to humidity, vibrations, and extremes of cold and heat. Dr. Wadley indicated no limitations in Plaintiff's ability to feel, see, speak, hear or use her hands. R. at 351.

In August 2004 Plaintiff fell from a ladder while changing a light bulb and injured her back and fractured her wrist. In September, Dr. Wadley prescribed a wrist brace. R. at 292. Later in September, Dr. Wadley prescribed a nebulizer for Plaintiff due to COPD and asthma. R. at 290.

In May 2004, Plaintiff began going to White Oak Medical Center where she was seen by Jeffrey Tichenor, a Certified Physician's Assistant. Plaintiff reported problems breathing and coughing and Tichenor indicated Plaintiff suffered from acute exacerbation of chronic bronchitis and tobacco addiction. R. at 287. She saw Dr. McBee at the White Oak Medical Center in early January 2005 and he diagnosed her as

---

[1]According to websites maintained by the Uniformed Services University of the Health Sciences and the American Journal of Roentgenology, an Azygos Lobe is a congenital condition created when the lungs form around the azygos vein, causing a "lobe" to develop. It does not cause any physical difficulties and is noteworthy because it is present in only 0.5% of the population. http://rad.usuhs.mil/medpix/topic_display.html?recnum=4181&pt_id=11234&imageid=#top (last visited March 20, 2008); http://www.ajronline.org/cgi/content/full/184/2/697 (last visited March 20, 2008).

[2]For some reason, Dr. Wadley returned only the last page of the RFC Form. R. at 64.

suffering from bronhcial asthma, sinusitis, and mild pharyngitis. R. at 286. Plaintiff saw Tichenor later that month complaining of ear and back pain. She indicated the fall in August "probably started the back pain." An injection was administered in the sacroiliac joint. R. at 284. In mid-February Plaintiff reported she had a "dull ache" that was relieved by sitting and another injection was administered. R. at 282-83.

In early March 2005, Tichenor completed a Medical Source Statement indicating Plaintiff could lift or carry five pounds occasionally and less than five pounds frequently, stand or walk less than one hour per day, sit less than thirty minutes at a time and less than one hour total per day, and had limited ability to push or pull due to back pain and breathing difficulties. He also indicated Plaintiff should never stoop or crouch and could only occasionally climb, balance, kneel, or crawl. Finally, he declared Plaintiff needed to lie down for fifteen to twenty minutes every hour. R. at 279-80. An MRI of Plaintiff's spine taken later that month revealed "mild distal lumbar disc degeneration without significant central canal stenosis" and mild narrowing at L4-5. R. at 308.

Plaintiff underwent another pulmonary function test on April 14, 2005. The report indicates the testing was performed twice: once before medication and once after medication. Before medication, Plaintiff's forced vital capacity was 2.34 and her FEV-1 was 1.63, with the percentages for those numbers at 82.3% and 67.4%, respectively. After medication, Plaitniff's forced vital capacity was 2.90 and her FEV-1 was 2.13, resulting in percentages of 102% and 88%, respectively. The interpretation of these results was "obstruction: mild." R. at 306.

A hearing was held before an ALJ on April 25, 2005. Plaintiff testified she last worked at a convenience store in 2002, making pizzas and operating the cash register. The dust and cold from the freezer caused her to cough uncontrollably, which is why she was fired. R. at 37, 44. At that time, and until she fell in August 2004,[3] Plaintiff was "able to stand 12 hours a day with no problem." R. at 42. Now, however, she has

---

[3]The ALJ's question actually references a fall in February 2005. However, there is no evidence of such an incident, and the Court believes the ALJ misspoke and Plaintiff did not understand the time parameters (particularly given the preceding discussion of her August 2004 fall).

4

constant pain in her back and is sore all the time, and the pain is exacerbated by sitting, standing and bending. She takes Tylenol for the pain, which helps. R. at 56-58. She spends most of her time reclining and napping. R. at 61-62.

With respect to Plaintiff's breathing and coughing difficulties, Plaintiff testified that smoke, fumes, and dust make her condition worse. While she has reduced the amount she smokes, she still smokes five cigarettes per day and frequents restaurants where second-hand smoke is a problem. R. at 39-41, 63-64. Despite reducing her smoking and the use of medication, her condition "seems like it may have gotten just a little bit better, but not a whole lot." R. at 40; see also R. at 41. Later, in a seeming contradiction, Plaintiff stated "[t]aking my medicines and stuff has helped a lot and cutting down on the smoke has done wonders, I mean, you know, considering it's not done as much as what I would have hoped." R. at 46. She uses her nebulizer four times a day for ten minutes at a time, but only two of those uses are scheduled between 8:00 a.m. and 5:00 p.m.. R. at 46. Plaintiff testified that the medication makes her nauseous and light-headed, rendering her incapable of doing anything for two to three hours. R. at 47-50. Plaintiff also declared that she was depressed and disliked confrontation, and had difficulties reading and writing. R. at 51-53.

The ALJ elicited testimony from a vocational expert ("VE"). He was asked to assume an individual with Plaintiff's work experience who had limited education and could perform a full range of sedentary work except for an inability to push or pull repetitively with her right hand, work in an environment with unprotected heights, dust, fumes, or extreme temperatures. The individual also had limited ability to bend, twist, turn, or read and understand simple instructions (although she could carry out such instructions without difficulty once they were understood). The VE testified such an individual could not return to her past work, but could perform sedentary unskilled work such as an assembler or a table worker. R. at 68-70. The VE was then asked to assume the same individual who also required the ability to leave her work station at unscheduled times, twice in the morning and twice in the afternoon for ten minutes at least once a week. The VE testified such an individual could not perform any of the jobs he previously identified. R. at 70. Upon questioning from Plaintiff's attorney, the VE

5

testified the first individual could not perform work if they were also limited to only occasional manipulation with the right (dominant) hand. R. at 71.

The ALJ did not find Plaintiff's testimony to be completely credible. Medical records, including objective test results, did not support the degree of limitation she described. R. at 22. As for those reports indicating significant limitations, the ALJ found they were not "sufficiently well supported by medically acceptable clinical and laboratory diagnostic techniques" or "consistent with the other substantial evidence in the record." R. at 23. He specifically rejected Tichenor's RFC form because he was not an acceptable medical source and his statement was "superficial, inconsistent with the record as a whole, and inaccurate," the latter description based on a failure to consider the effect of Plaintiff's reduction in smoking. R. at 23. The ALJ also noted Plaintiff continued to expose herself to smoke – including smoking cigarettes – which was "inconsistent with the extreme breathing limitations that she alleges since the alleged onset date." R. at 21. The ALJ concluded Plaintiff retained the ability to perform sedentary work that does not require repetitive pushing or pulling with the right hand, frequent bending, twisting, turning, crawling, kneeling, stooping or squatting, frequent handling with the right hand, or exposure to dust, fumes, or extreme temperatures. He also found Plaintiff's "ability to understand short and simple written instructions requires repetitive reading . . . before understanding and remembering [but] no limitation carrying out simple or detailed instructions." R. at 26. Based on these findings and the VE's testimony, the ALJ found Plaintiff was not disabled.

## II. DISCUSSION

Plaintiff presents several arguments, all of which relate to the ALJ's (1) evaluation of the evidence and (2) factual findings. "[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite

6

conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

Plaintiff faults the ALJ for failing to accord sufficient weight to her testimony and for failing to include the limitations she described. The governing standard is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
>     1. The claimant's daily activities;
>     2. the duration, frequency and intensity of the pain
>     3. precipitating and aggravating factors;
>     4. dosage, effectiveness and side effects of medication;
>     5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

7

Case 3:07-cv-05042-ODS   Document 16   Filed 03/25/08   Page 7 of 9

739 F.2d at 1322. Here, the ALJ identified several factors that justified his decision not to accept Plaintiff's testimony in full. Plaintiff lost her job in 2002, but at that time her ability to sit or stand was unlimited. While she allegedly lost her job due to coughing spasms, those spasms were caused by particular aspects of her job – exposure to cold and dust. Problems with her back and hip did not develop until she fell in August 2004, so until that date the only limitation Plaintiff had was related to her COPD – and with the COPD alone, Plaintiff was able to work at jobs that did not involve dust, heat, cold, or other exacerbating conditions. Moreover, Plaintiff was reducing the number of cigarettes she smoked over time, so her condition was unlikely to have worsened over the years. Indeed, objective medical tests demonstrated improvement in Plaintiff's pulmonary functions between January 2004 and April 2005. Plaintiff did not stop exposing herself to smoke, even though she acknowledged such exposure exacerbated her difficulties. Finally, Plaintiff's reports to her doctors do not indicate the same level of severity she described in her testimony. Similarly, there is no indication Plaintiff reported the serious side effects from medication she related to the ALJ. With respect to Plaintiff's back and hip pain – which, as noted, was not an issue until August 2004 – the ALJ noted the lack of medical support for a condition that would cause the severe limitations Plaintiff described. Plaintiff also did not tell her doctors the same things she testified to before the ALJ. Plaintiff has received injections, and during the hearing described plans to receive an epidural. However, she currently takes over the counter medication (Tylenol) and obtains relief, which indicates a non-disabling condition. See Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994).

      These are but a few of the legitimate factors the ALJ could consider in assessing Plaintiff's testimony. While Plaintiff's testimony might support a finding of disability if it were accepted in its entirety, the Record justifies the ALJ's determination that Plaintiff's testimony was not completely accurate. This is a determination for the ALJ to make, and the ALJ must be affirmed because substantial evidence in the Record as a whole supports that determination.

      Plaintiff also faults the ALJ for failing to fully credit her treating sources, most notably Tichenor's RFC. The ALJ correctly noted Tichenor was not an "acceptable

8

medical source" within the meaning of the regulations, so he could not establish the existence of an impairment. Tichenor's RFC could be used to demonstrate the severity of impairments that were properly established. 20 C.F.R. §§ 1513(a), 1513(d)(1). However, the ALJ offered valid reasons for declining to accord it much weight. Most notably, Tichenor's opinions were inconsistent with both the objective medical information and the complaints Plaintiff made when pursuing treatment.[4]

### III. CONCLUSION

For these reasons, the Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

                                                      /s/ Ortrie D. Smith
                                                    ORTRIE D. SMITH, JUDGE
DATE: March 25, 2008                        UNITED STATES DISTRICT COURT

---

[4]Although it is not clear whether Plaintiff is asserting the ALJ should have accorded more weight to Dr. Ballard's opinion, it should be noted that whether a person meets the criteria for a disability is not a medical opinion. See, e.g., Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002).